Cristina Perez Hesano (#027023)
**PEREZ LAW GROUP, PLLC**
7508 North 59th Avenue
Glendale, Arizona 85301
Telephone: (602) 730-100
Fax: (602) 612-6266
cperez@perezlawgroup.com

(Additional Counsel Listed Below)

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nicholas Lamonica, and Michael Clemente, each and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>The Shield Companies, LLC; The Shield Co Management, LLC; The Shield Co Marketing, LLC; Ecoshield Pest Solutions Chicago, LLC; Robert Douglas Cardon; and Gregory Nygren,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

**CLASS ACTION COMPLAINT**

Plaintiffs Nicholas Lamonica and Michael Clemente ("Plaintiffs") bring this action on behalf of themselves and all other similarly situated consumers who entered into subscription contracts for recurring pest-extermination services as a result of the fraudulent, unfair, and deceptive business practices by Defendants The Shield Companies, LLC; The

- Page 1 -

Shield Co Management, LLC; The Shield Co Marketing, LLC; EcoShield Pest Solutions Chicago, LLC; Robert Douglas Cardon, and Gregory Nygren (collectively, "EcoShield"). Plaintiffs hereby allege the following with knowledge as to their own acts and upon information and belief and investigation of counsel as to all other acts:

## I.   NATURE OF THE ACTION

1. EcoShield is a high-volume, pest control enterprise that operates in 27 states and utilizes door-to-door salespersons to induce consumers into subscription contracts for extermination services.

2. EcoShield's salespersons adhere to standardized, high-pressure sales tactics that rely on fraudulent, unfair, and deceptive conduct to trap consumers into contracts with costly cancellation fees disguised as discounts. When consumers contest the fees, EcoShield threatens – and actually pursues – debt collection actions against its customers.

3. EcoShield's unlawful practices give rise to claims for unjust enrichment (Count I); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count II); and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. (Count III).

## II.   PARTIES

4. Plaintiffs are natural persons residing in Illinois. During the Class Period, Plaintiffs and other members of the below-defined Classes entered into pest control service agreements with EcoShield as a result of EcoShield's fraudulent, unfair, and deceptive conduct.

5. The Shield Co Management, LLC is an Arizona limited liability company with a principal place of business in Maricopa County, Arizona. The Shield Companies, LLC is the manager of Shield Co Management, LLC and its members consist of Robert D. Cardon, Gregory Nygren, and Jason Jonas. Cardon and Nygren are natural persons residing in the State of Arizona.

6. The Shield Companies LLC is an Arizona limited liability company with a principal place of business in Maricopa County, Arizona. Its members consist of Robert D. Cardon and Gregory Nygren.

7. The Shield Co Marketing, LLC is an Arizona limited liability with a principal place of business in Maricopa County, Arizona. The Shield Co Management, LLC is the manager of The Shield Co Marketing and its member is The Shield Companies, LLC.

8. EcoShield Pest Solutions Chicago, LLC is an Arizona limited liability company, registered to do business in the State of Illinois since May 2011. The Shield Co Management, LLC is the manager of EcoShield Pest Solutions Chicago, LLC, and its member is The Shield Companies, LLC.

### III.   JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with this District in that they reside or have their principal places of business within this District, operate and market their services throughout the country and in this District, and developed their scheme to injure Plaintiff and the Class within this District.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and a member of the Class is a citizen of a different State than EcoShield.

11. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Lamonica's Experience

12. On July 3, 2023, Plaintiff was approached at his residence in Park Ridge, Illinois, by a door-to-door sales representative employed by EcoShield.

13. The representative, wearing EcoShield-branded attire, informed Plaintiff that EcoShield was servicing several of his neighbors' homes and that a technician was already in the area.

14. The representative stated that EcoShield's standard rate for initial pest control service was $519.00, but that Plaintiff qualified for a limited-time deal because they were already working in the neighborhood.

15. The sales representative offered Plaintiff what was described as a $300.00 discount, reducing the price to $219.00, if he agreed to sign up on the spot.

16. Plaintiff was told that this price was only available right now and would not be available if he waited.

17. The sales pitch emphasized urgency and exclusivity, suggesting that immediate treatment would provide the most effective results and mitigate the emergent pest

issue.

18. Plaintiff, believing he was receiving a limited-time neighborhood discount, agreed to sign up.

19. Relying on these representations, and believing the offer was exclusive and urgent, Plaintiff agreed to sign a service agreement, attached hereto as Exhibit 1.

20. Plaintiff was presented with a standard form contract, which he executed electronically the same day.

21. Plaintiff was not presented the opportunity to review the full agreement in advance and was instead guided through a tablet-based electronic signature process.

22. Plaintiff was not orally informed of his right to cancel the contract within three business days, as required under federal law, 16 C.F.R. § 429.1(e).

23. The following day, EcoShield dispatched a technician to Plaintiff's home who performed a brief and routine pest spray.

24. Plaintiff was subsequently enrolled in a quarterly subscription with recurring charges of $219.00 per visit and a stated term of 24 months despite never being informed that the agreement would lock him into a two-year contract.

25. When Plaintiff later attempted to cancel the agreement, he was informed that because service had already been performed, he was not entitled to a refund and would be responsible for paying back the $300 "discount."

**B.     Clemente's Experience**

26. On July 8, 2024, Plaintiff Michael Clemente was approached at his residence in Park Ridge, Illinois, by a door-to-door sales representative employed by EcoShield.

27. The representative, wearing EcoShield-branded attire, informed Plaintiff that EcoShield was servicing several homes in the area and that a technician was already in the neighborhood

28. The representative stated that EcoShield's regular rate for the initial pest control service was $349.00, but because they were already in the area, Plaintiff qualified for a special limited-time deal.

29. The representative offered Plaintiff what was described as a $200.00 discount reducing the upfront initial service cost to $149.00 and framing it as a limited-time promotional rate.

30. Plaintiff was told that this price was only available right now and would not be available if he waited.

31. Plaintiff, believing he was receiving a limited-time neighborhood discount, agreed to sign up.

32. Relying on these representations, and believing the offer was exclusive and urgent, Plaintiff agreed to sign a service agreement, attached hereto as Exhibit 2.

33. Plaintiff was presented with a standard form contract, which he executed electronically the same day.

34. Plaintiff was not presented the opportunity to review the full agreement in advance and was instead guided through a tablet-based electronic signature process.

35. Plaintiff was not orally informed of his right to cancel the contract within three business days, as required under federal law, 16 C.F.R. § 429.1(e).

36. Upon signing the agreement, EcoShield immediately dispatched a technician

to Plaintiff's home who performed a brief and routine pest spray that same day.

37. Plaintiff was subsequently enrolled in a quarterly subscription with recurring charges of $169.00 per visit and a stated term of 24 months despite never being informed that the agreement would lock him into a two-year contract.

38. When Plaintiff later attempted to cancel the agreement, he was informed that because service had already been performed, he was not entitled to a refund and would be responsible for paying back the $200 "discount."

39. Plaintiff refused to pay the fee, asserting that he had fulfilled his obligations under the agreement and had never been properly informed of such a penalty.

40. Despite this, EcoShield referred the disputed amount to a third-party debt collection agency, which began pursuing Plaintiff for the supposed "discount" repayment—damaging his credit and causing undue stress, where he remains today.

C. **EcoShield's Uniform Conduct**

41. Plaintiffs' experiences are not unique. EcoShield trains its sales representatives to memorize scripts and employ aggressive sales techniques, including how to address homeowners' objections and capitalize on emotional responses. EcoShield instructs salespersons on every aspect of the sales pitch, down to tone and body language.

42. EocShield's pitch is replete with fraudulent, unfair, and deceptive tactics, crafted to create a false sense of urgency to lock consumers into recurring contracts with costly, hidden cancellation fees. After trapping consumers into contracts, and in furtherance of its unlawful scheme, EcoShield purposefully intimidates, scares, and harms consumers who contest the fees by threatening to turn over their contracts to a collection agency, and in

fact often do so.

### i. *The Sales Pitch and Discount Scheme*

43. EcoShield instructs its salespersons to falsely state that EcoShield is servicing nearby homes that are all experiencing the same pest infestation, claiming that multiple surrounding homes are actively being serviced for the same pest issues, even if no actual service is being provided.

44. EcoShield routinely claims their service is cheaper and more effective than national pest control companies like Terminix and Orkin, creating the illusion that the customer is receiving superior value.

45. Salespersons are instructed to purposefully deceive consumers into believing they are being offered a time-sensitive "discount" tailored just for the consumer by making false statements that the service is cheaper for anyone who EcoShield can squeeze in while in the area.

46. The central feature of this script is EcoShield's use of a fictitious "Annual Commitment Discount," a term that appears in its contracts but misrepresents the true nature and purpose of EcoShield's pricing and cancellation model.

47. The purported "Annual Commitment Discount" is not a temporary offer or special promotion, but rather a standard term in its contracts used to create the illusion of urgency and value.

48. EcoShield requires customers who attempt to cancel to repay the "Annual Commitment Discount" they were told they received. In practice, this fee functions as a concealed cancellation penalty, retroactively imposed once the customer attempts to cancel

the contract.

49. EcoShield does not disclose the true nature of the cancellation fee, instead promising consumers they can cancel at any time.

50. As a result, consumers are left with a false impression that the discount is a genuine, unique saving available only because of their location, timing, or neighbor participation.

51. This tactic serves a dual purpose:

    a. To induce the consumer's signature by creating urgency and the illusion of a unique, time-sensitive deal.

    b. To discourage cancellation by transforming the "discount" into a debt obligation that EcoShield uses to deter and penalize termination.

### *ii. The Adhesion Contract*

52. After the sales pitch, EcoShield presents consumers with a standardized contract via an electronic tablet and obtains the consumer's e-signature on the spot. Consumers are not afforded an adequate opportunity to review the terms of the contract and are "guided" through the signature process by the EcoShield salesperson.

53. The contract is adhesionary in all respects. Consumers cannot negotiate the terms of the contract and are pressured into signing the agreement under false pretenses of an emergent pest situation and/or a time-sensitive discount.

54. The contract does not define the term "Discount" and EcoShield coerces consumers to repay the "Annual Commitment Discount" regardless of when the contract is

cancelled, *e.g.*, even if consumers have fulfilled their "annual commitment."

55. Salespersons do not orally explain the "Discount" clause or the post-signature consequences of early termination. Many consumers are unaware they agreed to an auto-renewal provision with cancellation penalties or that they agreed to a multi-month service commitment.

56. When consumers refuse to repay the "discount", EcoShield threatens to and often does pursue debt collection actions, effectively holding consumers hostage unless they pay the costly fee.

57. Further, EcoShield does not orally inform consumers of their rights to cancel the contract within three business days, in violation of the FTC's Cooling-Off Rule. The Rule makes it an unfair and deceptive act or practice for any door-to-door salesperson to fail to inform consumers orally of their right to cancel the contract within three business days or to misrepresent in any manner the consumer's right to cancel. 16 C.F.R. § 429.1(e) & (f).

### *iii. EcoShield's Fraud is Rampant and Uniform*

58. Hundreds of consumers across the United States have publicly reported nearly identical misconduct of EcoShield in complaints posted to the Better Business Bureau, Reddit, Trustpilot, Google Reviews, and other online forums

59. These complaints describe the same pattern of deception: door-to-door sales representatives falsely claiming neighborhood participation, offering time-limited "discounts," threats of sending customers to collections if they refuse to pay the cancellation fee, and refusing to cancel or refund despite timely requests.

## V. CLASS ACTION ALLEGATIONS

60. Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves and the following classes:

> **National Class:** All persons in the United States who entered into a residential pest control services agreement with EcoShield Pest Solutions, LLC or one of its affiliates through a door-to-door sales solicitation.

> **Illinois Subclass:** All persons who entered into a residential pest control services agreement with EcoShield Pest Solutions, LLC or one of its affiliates through a door-to-door sales solicitation who are, or were at the time of entering into the agreement, Illinois residents.

61. <u>Numerosity (Fed. R. Civ. P. 23(a)(1))</u>. The members of the Class are so numerous and geographically diverse that joinder is impracticable.

62. <u>Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) & (a)(3))</u>. One or more common questions of law or fact are apt to drive resolution of the case and predominate over any questions affecting solely individual Class Members. The common questions include but are not limited to:

   a. Whether the pest control service agreements entered into by the Class and EcoShield are invalid and unenforceable;

   b. Whether the Class conferred economic benefits on EcoShield;

   c. Whether EcoShield was unjustly enriched at the expense of the Class;

   d. Whether EcoShield's sales tactics constitute unfair or deceptive acts or practices;

e. Whether EcoShield's inclusion of the Annual Commitment Discount in the pest control service agreements constitutes an unfair or deceptive act or practice; and

f. Whether the Class suffered actual pecuniary loss as result of EcoShield's misconduct.

63. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>. Plaintiffs' claims are typical of the claims of other Class Members because they arise out of the same common course of conduct by EcoShield and are based on the same legal theories.

64. <u>Adequacy (Fed. R. Civ. P. 23(a)(4))</u>. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with the interests of the Class.

65. <u>Superiority (Fed. R. Civ. P. 23(b)(3))</u>. Plaintiffs and Class members have suffered and will continue to suffer harm and damages due to EcoShield's unlawful conduct. Absent a class action, however, most Class members would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

66. <u>Declaratory and Injunctive Relief (Fed. R. Civ. P. 23(b)(2))</u>. EcoShield has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

67. Additionally, the Classes may be certified under Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

68. Tolling: Any applicable statute of limitations has been tolled by EcoShield's knowing and active concealment of the conduct and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and Class members were deceived and could not reasonably discover EcoShield's deception and unlawful conduct.

## VI.  CAUSES OF ACTION

### COUNT I
**Unjust Enrichment (Quasi-Contract for Restitution and Disgorgement)**
**(On behalf of the Nationwide Class)**

69. Plaintiffs hereby incorporate the factual allegations set forth above by reference.

70. The pest control service agreements entered into by Plaintiffs and the Class on one hand, and EcoShield on the other, are invalid and unenforceable because they are the product of EcoShield's fraudulent and wrongful conduct described herein.

71. Plaintiffs and Class Members conferred economic benefits upon EcoShield in the form of unlawful charges under the purported agreements, including payment of the illusory Annual Commitment Discount which actually acts as a cancelation fee.

72. As a result, EcoShield was unjustly enriched at the expense of Plaintiffs and the Class and received benefits it would not have received but for its wrongful conduct.

73. It would be inequitable for EcoShield to retain the benefits it has unjustly received.

74. Plaintiffs and Class Members are therefore entitled to relief, including restitution and disgorgement of all revenues, earning, and profits that EcoShield obtained as a result of its unlawful and wrongful conduct.

**COUNT II**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**(ICFA), 815 ILCS 505/1, *et seq.***
**(On Behalf of the Illinois Subclass)**

75. Plaintiffs hereby incorporate the factual allegations set forth above by reference.

76. The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices…in the conduct of any trade or commerce…"

77. EcoShield engaged in unfair and deceptive acts in that EcoShield's conduct constitutes a violation of (among other laws), the FTC's Cooling-Off Rule, 16 C.F.R. § 429.

78. EcoShield has engaged in additional unfair and deceptive acts by falsely stating that EcoShield is servicing neighbors' homes; falsely stating that neighbors are experiencing the same emergent pest issues; offering time-sensitive discounts that are neither time-limited nor discounts at all, but included in all EcoShield contracts; failing to disclose

that these purported discounts must be repaid as a cancellation fee; referring to these discounts as "Annual Commitment Discounts," but requiring consumers to repay the discount regardless of when the contract is cancelled; failing to orally inform consumers of their cancellation rights under the FTC's Cooling-Off Rule; not affording consumers adequate opportunities to review the contracts before signing; and coercing consumers into paying the cancellation fee (*i.e.*, the Annual Commitment Discount) by threatening and pursuing collection actions.

79. EcoShield had a duty to disclose the above-referenced material omissions because it had special knowledge of the facts while Plaintiffs and the Class did not and because the disclosures were required to prevent Plaintiffs and the Class from being misled under the circumstances created by EcoShield.

80. EcoShield's conduct was purposeful and intentionally designed to induce Plaintiffs and the Class to rely on EcoShield's unfair and deceptive acts.

81. EcoShield's conduct, misrepresentations, and omissions have also impaired competition within the extermination market in that EcoShield's conduct prevented Plaintiffs and Class Members from making fully informed decisions about whether to become an EcoShield customer in the first instance.

82. Plaintiffs and Class Members relied on EcoShield's conduct, misrepresentations, and omissions when they entered into contracts with EcoShield.

83. Indeed, EcoShield's conduct was likely to deceive any consumer acting reasonably in the same circumstances.

84. Had Plaintiffs and Class Members known the truth about EcoShield's conduct and the nature of the "Annual Commitment Discount," they would not have entered into contracts with EcoShield.

85. EcoShield's wrongful acts alleged herein continue to occur. EcoShield's conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated around the Country, including in the State of Illinois.

86. EcoShield's conduct alleged herein offends public policy and is directed to a significant segment of the public. Thus, challenging EcoShield's misconduct confers a public benefit.

87. As a direct and proximate result of EcoShield's misconduct, Plaintiffs and the Class suffered actual pecuniary losses, including unlawful charges and the loss of money attributable to repayment of the Annual Commitment Discount.

88. If EcoShield does not change its practices, EcoShield will continue to deceive consumers into recurring subscription contracts, thereby subjecting consumers to unlawful charges and forcing them to pay fraudulent, unfair, and deceptive cancellation fees under threats of debt collection actions.

89. As a result, the threat of future injuries is actual, imminent, and ongoing.

90. Plaintiffs and Class Members request that this Court enjoin EcoShield from continuing its unfair, fraudulent, unlawful, and deceptive practices and to restore to Plaintiffs and Class Members, in the form of restitution, any money EcoShield acquired through its misconduct, including but not limited to, payments of the Annual Commitment Discount.

**COUNT III**
**Declaratory Judgment Pursuant to 28 U.S.C. § 2201, *et seq.***
**(On Behalf of the Nationwide Class)**

91. Plaintiffs hereby incorporate the factual allegations set forth above by reference.

92. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, this Court is authorized to declare the rights and legal relations of the parties and to grant further necessary or proper relief. This includes the relief necessary to prevent and remedy EcoShield's ongoing violations of consumer protection statutes, as well as common law duties.

93. An actual controversy exists between Plaintiffs and EcoShield regarding EcoShield's use of fraudulent, unfair, and deceptive business practices, which have resulted in economic injuries to Plaintiffs and Class Members.

94. Class Members continue to suffer ongoing harm from EcoShield's misconduct as alleged herein because EcoShield continues to coerce Class members to incur unlawful charges under purported service agreements.

95. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. EcoShield residential pest services agreements entered into by Plaintiffs and the Class are voidable;

    b. Any provision in the EcoShield residential pest services agreements that requires repayment of a discount, including the Annual Commitment Discount, are invalid and unenforceable; and

     c. EcoShield's practice of threatening to or pursuing collection actions against Plaintiff and the Class, reporting alleged debts of Plaintiffs and the Class to credit bureaus, or undertaking other similar conduct against Plaintiffs and the Class to threaten or actually harm Plaintiffs and the Class's credit or financial status, as it relates to the conduct described herein, is unlawful.

96. The Court should also issue corresponding injunctive relief, including but not limited to enjoining EcoShield from engaging in the fraudulent, unfair, and deceptive tactics described in this Complaint.

97. If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury and lack adequate remedy in the event of EcoShield's ongoing conduct.

98. The requested declaratory and injunctive relief will serve the public interest by compelling compliance with consumer protection laws and deterring future misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Subclass set forth herein, respectfully request the following relief:

    A. That the Court certify this action as a class action and appoint Plaintiff and their counsel to represent the Class;

    B. That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

    C. That the Court award compensatory, consequential and general damages,

including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

D. That the Court award statutory or punitive damages as allowed by law in an amount to be determined at trial;

E. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of Defendant's unlawful acts, omissions, and practices;

F. That the Court award to Plaintiff and Class members reasonable attorneys' fees, costs, and expenses; and

G. That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. Rule Civ. P. 38, Plaintiffs hereby demand a jury trial.

Dated: June 19, 2025.     Respectfully Submitted,

By: */s/ Cristina Perez Hesano*
Cristina Perez Hesano
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ  85301
Phone (602) 730-7100
cperez@perezlawgroup.com

**GIANARIS TRIAL LAWYERS, LLC**
Ted N. Gianaris
*tgianaris@lawforpeople.com*
One Court Street
Alton, Illinois 62002
Telephone: (618) 619-0010

**SIMMONS HANLY CONROY, LLC**
Jason "Jay" Barnes, *pro hac vice forthcoming*
Eric S. Johnson, *pro hac vice forthcoming*
*jaybarnes@simmonsfirm.com*
*ejohnson@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400

*Attorneys for Plaintiffs and Proposed Class*