Cristina Perez Hesano (#027023)
**PEREZ LAW GROUP, PLLC**
7508 North 59th Avenue
Glendale, Arizona 85301
Telephone: (602) 730-100
Fax: (602) 612-6266
cperez@perezlawgroup.com

(Additional Counsel Listed Below)

*Attorneys for Plaintiff and the Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Lamonica, Valerio Bruscianelli, Joel Walma, and Rebekah Walma, each and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>The Shield Companies, LLC; The Shield Co Management, LLC; The Shield Co Marketing, LLC; Ecoshield Pest Solutions Chicago, LLC; EcoShield Pest Solutions Detroit, LLC; EcoShield Pest Solutions New Jersey, LLC; Robert Douglas Cardon, and Gregory Nygren,<br><br>        Defendants. | Case No.: 25-cv-02151-SMB<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED<br><br><br><br><br><br>\ |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Nicholas Lamonica, Valerio Bruscianelli, Joel Walma, and Rebekah Walma ("Plaintiffs") bring this action on behalf of themselves and all other similarly situated consumers who entered into subscription contracts for recurring pest-extermination services

as a result of the fraudulent, unfair, and deceptive business practices by Defendants The Shield Companies, LLC; The Shield Co Management, LLC; The Shield Co Marketing, LLC; EcoShield Pest Solutions Chicago, LLC; EcoShield Pest Solutions Detroit, LLC; EcoShield Pest Solutions New Jersey, LLC; Robert Douglas Cardon, and Gregory Nygren (collectively, "EcoShield"). Plaintiffs hereby allege the following with knowledge as to their own acts and upon information and belief and investigation of counsel as to all other acts:

## I.    NATURE OF THE ACTION

1.    EcoShield operates a nationwide door-to-door sales scheme that is calculated, uniform, and deceptive by design. Its representatives are trained to fabricate neighborhood pest problems, invent fictitious "limited-time" discounts, and bury material terms in rushed, tablet-based contracts. The so-called "discounts" are not discounts at all, but hidden cancellation penalties that trap consumers in long-term service agreements they neither truly understood nor wanted. EcoShield's sales agents systematically omit federally-mandated cancellation disclosures, conceal onerous contract terms such as automatic renewal and multi-year commitments, and employ threats of collections and credit harm to force continued payments. These practices are not isolated errors – they are the core of EcoShield's sales strategy, executed across states, neighborhoods, and customers, including Plaintiffs Bruscianelli, Lamonica, and the Walmas.

2.    In each instance, EcoShield sales representatives present themselves in EcoShield-branded attire, arrive unannounced at consumers' homes, and claim they are already servicing multiple neighboring properties for an active pest infestation.

3.    Representatives tell consumers that, because EcoShield is allegedly working

in the neighborhood and/or has a technician in the area, the consumer qualifies for an exclusive, limited-time discount off the so-called standard rate for initial pest control service.

4.    In reality, this discount – billed variously as up to hundreds of dollars – is entirely fictitious. It is neither time-sensitive nor exclusive, but instead is embedded in every standard EcoShield door-to-door contract as an "Annual Commitment Discount."

5.    The "discount" is, in truth, a hidden cancellation penalty: if the customer attempts to terminate service, EcoShield demands repayment of the full discount amount as a condition of cancellation.

6.    EcoShield sales representatives fail to disclose this repayment obligation at the point of sale. Nor do they disclose other material contract terms, such as the contract's stated duration – which spans 12 months for some customers and 24 months for others – or any automatic renewal provisions.

7.    EcoShield's sales tactics leverage urgency, exclusivity, and fear to pressure homeowners into on-the-spot commitments.

8.    EcoShield's representatives present the company's standard form contract on an electronic tablet, rushing the consumer through the signature process without affording any meaningful opportunity to read the agreement.

9.    EcoShield's representatives also fail to provide the required oral notice of the consumer's statutory right to cancel within three business days, in direct violation of the Federal Trade Commission's Cooling-Off Rule, 16 C.F.R. § 429.1(e).

10.    After obtaining the consumer's electronic signature, EcoShield often

dispatches a technician to perform service the same day – thereby attempting to make the sale seem final and irreversible.

11. EcoShield's unlawful practices give rise to claims for unjust enrichment (Count I); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count II); violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8 (Count III);  and violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.* (Count IV).

## II.     PARTIES

4. Plaintiff Nicholas Lamonica is a natural person and citizen of Illinois, and resides in Park Ridge, Illinois.

5. Plaintiff Valerio Bruscianelli is a natural person and citizen of New Jersey, and resides in Allentown, New Jersey.

6. Plaintiffs Joel and Rebekah Walma are natural persons and citizens of Michigan, and reside in Holland, Michigan.

7. During the Class Period, Plaintiffs and other members of the below-defined Classes entered into pest control service agreements with EcoShield as a result of EcoShield's fraudulent, unfair, and deceptive conduct and became victims of the unlawful scheme.

8. The Shield Co Management, LLC is an Arizona limited liability company with a principal place of business in Maricopa County, Arizona with its known place of business

listed at the address 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ, 85297, USA. Robert D. Cardon, Gregory Nygren, and Jason Jonas are managers of The Shield Co Management, LLC, and The Shield Companies, LLC is its member.

9.    The Shield Companies, LLC is also an Arizona limited liability company with a principal place of business in Maricopa County, Arizona with an identical listed address as The Shield Co Management, LLC.[1]  The Shield Companies, LLC has two members—Robert D. Cardon and Gregory Nygren. The Shield Companies, LLC is also managed by The Shield Co Management, LLC. Its members, Robert D. Cardon and Gregory Nygren, are natural persons and citizens of the State of Arizona.

10.    The Shield Co Marketing, LLC is another Arizona limited liability company with a principal place of business in Maricopa County, Arizona with an identical listed address as The Shield Co Management, LLC and The Shield Companies, LLC: 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ, 85297. The Shield Companies, LLC is its sole member, and The Shield Co Management, LLC is its manager.

11.    EcoShield Pest Solutions Chicago, LLC is an Arizona limited liability company, with a principal place of business in Maricopa County, Arizona with its known place of business listed at 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ, 85297, USA. The Shield Companies, LLC is its sole member, and The Shield Co Management, LLC is its manager. EcoShield Pest Solutions Chicago, LLC has been registered to do business in the

---

[1] In The Shield Co Management, LLC's registered entity documentation, The Shield Companies, LLC's address is listed as 2250 E. Germann Rd., #12, Chandler, AZ, 85286, but in it its own entity documentation, The Shield Companies, LLC's address is listed as 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ, 85297, USA.

State of Illinois since May 2011.

12.     EcoShield Pest Solutions Detroit, LLC is an Arizona limited liability company, with a principal place of business in Maricopa County, Arizona with its known place of business listed at 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ, 85297, USA. The Shield Companies, LLC is its sole member, and The Shield Co Management, LLC is its manager. EcoShield Pest Solutions Detroit, LLC has been registered to do business in the State of Michigan since March 2019.

13.     EcoShield Pest Solutions New Jersey, LLC is an Arizona limited liability company, with a principal place of business in Maricopa County, Arizona with its known place of business listed at 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ, 85297, USA. The Shield Companies, LLC is its sole member, and The Shield Co Management, LLC is its manager. EcoShield Pest Solutions New Jersey, LLC has been registered to do business in the State of New Jersey since November 2019.

14.     These entities, including the Individual Defendants, are heavily intertwined and work in concert to perpetuate the deceptive scheme outlined below, and all Defendants operate as a single fictious entity or brand called EcoShield, EcoShield Pest Solutions, or EcoShield Pest Control as evidenced by their uniform, singular website[2] and their standard EcoShield branded sales attire and consumer facing materials.

15.     Even the EcoShield Pest Solutions website boasts "service areas" across 30[3]

---

[2] https://www.ecoshieldpest.com/

[3] Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana,

different states providing addresses for the "EcoShield Office Locations" within each state. New clients are directed to the same corporate phone number regardless of the unique region. The address in the registration documentation for each Entity Defendant is listed on the website as the "Corporate Address" on the Contact landing page. This publicly presents a single, unified organization servicing each of the identified areas nationwide.

16.    As such, Plaintiffs assert that all the conduct outlined herein is attributable to each defendant separately and together. As such, all Defendants will be collectively referred to as "Defendants" throughout the Amended Complaint.

### III.    JURISDICTION AND VENUE

17.    This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with this District in that they reside or have their principal places of business within this District, operate and market their services throughout the country and in this District, and developed their scheme to injure Plaintiff and the Class within this District.

18.    This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1332(d) (the Class Action Fairness Act), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class has more than 100 members, and at least onemember of the Class is a citizen of a different State than Defendants.

---

Kansas, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

19.     Venue is proper in this District under 28 U.S.C. § 139l(b)(1)-(2), because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Mr. Bruscianelli's Experience

20.     On August 1, 2022, Mr. Bruscianelli was approached at his residence in Allentown, New Jersey, by a door-to-door sales representative employed by EcoShield.

21.     The representative stated that EcoShield was providing pest control services to multiple neighboring homes due to a purported neighborhood-wide infestation of carpenter bees.

22.     The representative further claimed to have personally observed bees in or around Mr. Bruscianelli's home.

23.     To Mr. Bruscianelli's knowledge, none of his neighbors were receiving EcoShield services, nor were they experiencing a carpenter bee infestation.

24.     The representative stated that since EcoShield was working in the neighborhood, Mr. Bruscianelli qualified for a limited-time $150 discount if he signed a one-year pest control service agreement immediately.

25.     The EcoShield representative did not disclose that this purported "discount" was neither time-sensitive nor a genuine discount. Rather, it was part of every standard door-to-door contract and was subject to repayment as a concealed cancellation fee

26.     Relying on the representative's statements and believing he was receiving a genuine limited-time neighborhood discount, Plaintiff agreed to enroll in a one-year service

agreement with EcoShield.

27.     The EcoShield representative presented Mr. Bruscianelli with a standard form contract via a tablet, which Mr. Bruscianelli executed electronically on the spot.

28.     Mr. Bruscianelli was not provided an opportunity to review the full agreement beforehand. Instead, the representative hastily navigated the tablet and directed Mr. Bruscianelli to sign in designated places without explaining the full terms.

29.     The EcoShield representative did not orally inform Mr. Bruscianelli of his right to cancel the agreement within three business days, as required under the Federal Trade Commission's Cooling Off Rule, 16 C.F.R. § 429.1(e).

30.     Later that same day, EcoShield dispatched a technician to perform a pest control spray treatment around Mr. Bruscianelli's home.

31.     Mr. Bruscianelli paid EcoShield an initial service fee of $180.20 and was subsequently charged the same amount on a recurring, quarterly basis beginning in September 2022.

32.     When Mr. Bruscianelli contacted EcoShield to cancel services, EcoShield informed him that he would be required to repay the $150 "Annual Commitment Discount" because he was still within the one-year contractual term.

33.     Faced with this unexpected and excessive fee, Plaintiff continued the unwanted services to avoid the penalty

34.     After the year expired, Plaintiff again attempted to cancel. EcoShield claimed the contract had auto-renewed and again demanded repayment of the so-called discount as a condition of cancellation.

35.    Mr. Bruscianelli was never warned of an auto-renewal provision.

36.    EcoShield threatened to send Mr. Bruscianelli to collections if he failed to repay the discount fee, explaining that his credit score would be impacted.

37.    Under duress, Plaintiff ultimately paid the $150 "cancellation fee" to escape the deceptive agreement.

**B.    Mr. Lamonica's Experience**

38.    On July 3, 2023, Mr. Lamonica was approached at his residence in Park Ridge, Illinois, by a door-to-door sales representative employed by EcoShield.

39.    The representative, wearing EcoShield-branded attire, informed Mr. Lamonica that EcoShield was servicing several of his neighbors' homes and that a technician was already in the area.

40.    The representative stated that EcoShield's standard rate for initial pest control service was $519.00, but that Mr. Lamonica qualified for a limited-time deal because they were working in the neighborhood.

41.    The sales representative offered Mr. Lamonica what was described as a $300.00 "discount," reducing the price to $219.00, if he agreed to sign up on the spot.

42.    Mr. Lamonica was told that this price was only available right now and would not be available if he waited.

43.    EcoShield did not disclose that in truth, the "discount" was illusory. It was a standard term in EcoShield's door-to-door contracts and was, in fact, a cancellation penalty for terminating the contract.

44.    EcoShield's sales pitch emphasized urgency and exclusivity, suggesting that

immediate treatment was necessary and would provide the most effective results and mitigate the pest issue.

45.     Relying on these false and misleading claims, and believing he was securing a legitimate, limited-time neighborhood discount, Mr. Lamonica agreed to enroll.

46.     Mr. Lamonica would not have agreed to sign the service agreement had he known the truth about the "Annual Commitment Discount."

47.     The EcoShield representative presented Mr. Lamonica with a standard form contract on an electronic tablet, which he executed the same day.

48.     Mr. Lamonica was not afforded the opportunity to review the full agreement in advance and was instead rushed through a tablet-based electronic signature process by the EcoShield representative.

49.     The EcoShield representative did not orally inform Mr. Lamonica of his right to cancel the contract within three business days, as required under the Federal Trade Commission's Cooling Off Rule.

50.     Mr. Lamonica paid EcoShield an initial $219.00 fee and was subsequently charged the same amount on a recurring, quarterly basis beginning in August 2023.

51.     After one year, Mr. Lamonica called EcoShield to cancel. EcoShield responded that he would need to repay the entire $300 "Annual Commitment Discount" to terminate services.

52.     Unbeknownst to Mr. Lamonica, the contract had a stated term of 24 months despite never being informed that the agreement would lock him into a two-year contract.

53.     Unwilling to pay this concealed penalty, Mr. Lamonica continued the

unwanted services until the contract expired after two years.

**C.    Mr. And Mrs. Walma's Experiences**

54.    On April 22, 2024, the Walmas were approached at their residence in Holland, Michigan, by a door-to-door sales representative employed by EcoShield.

55.    The representative, wearing EcoShield-branded attire, informed the Walmas that EcoShield was servicing several of his neighbors' homes and that a technician was already in the area.

56.    The representative stated that the standard rate for a pest control service was $339.00, but that the Walmas qualified for a limited-time, exclusive "discount" of $200.00, since EcoShield was already servicing the neighborhood.

57.    The sales representative offered the Walmas to reduce the price to $139.00, if they agreed to sign up immediately.

58.    During the sales pitch, EcoShield did not disclose the true nature of the "discount," *i.e.*, that it was included in every door-to-door contract and had to be repaid as a cancellation fee.

59.    The representative also disparaged competitor Orkin, claiming EcoShield's services were superior and more effective than those used by many of the Walmas' neighbors.

60.    Relying on EcoShield's misrepresentations – and believing they were receiving a one-time, neighborhood-exclusive deal from a superior provider – the Walmas agreed to enroll.

61.    The EcoShield representative presented the Walmas with a standard form

contract on an electronic tablet, which they signed.

62.    The Walmas were not afforded the opportunity to review the full agreement in advance and were instead hastily guided through a tablet-based electronic signature process by the EcoShield representative.

63.    In fact, the Walmas believed they were providing their signature to permit a one-time service. However, without their knowledge, the Walmas were enrolled in a 24-month subscription agreement.

64.    The EcoShield representative did not orally inform the Walmas of their rights to cancel the contract within three business days, as required under the Federal Trade Commission's Cooling Off Rule.

65.    The Walmas paid an initial fee of $199.00 and were enrolled in recurring, quarterly charges of $199.00 beginning May 2024.

66.    The same day, EcoShield sent a technician to spray around the Walmas' home.

67.    The Walmas called EcoShield after the first service to cancel but were told they were locked into a contract and would have to repay the $200 "Annual Commitment Discount" to cancel.

68.    Not wanting to shoulder this concealed penalty, the Walmas continued to receive and pay for services they did not want.

69.    In February 2025, the Walmas again contacted EcoShield to cancel. EcoShield repeated its demand for repayment of the $200 so-called discount and threatened that refusal would trigger collection efforts.

70.    Only after persistent effort did the Walmas secure cancellation without paying

the fee – but they had already been forced to pay for months of unwanted and ineffective services.

### D.    EcoShield's Uniform Conduct

71.    Plaintiffs' experiences are not unique. EcoShield trains its sales representatives to memorize scripts and employ aggressive sales techniques, including how to address homeowners' objections and capitalize on emotional responses. EcoShield instructs salespersons on every aspect of the sales pitch, down to tone and body language.

72.    EcoShield's pitch is replete with fraudulent, unfair, and deceptive tactics, crafted to create a false sense of urgency to lock consumers into recurring contracts with costly, hidden cancellation fees. After trapping consumers into contracts, and in furtherance of its unlawful scheme, EcoShield purposefully intimidates, scares, and harms consumers who contest the fees by threatening to turn over their contracts to a collection agency, and in fact often doing so.

### i.    *The Sales Pitch and "Discount" Scheme*

73.    EcoShield instructs its salespersons to falsely state that EcoShield is servicing nearby homes that are all experiencing the same pest infestation, claiming that multiple surrounding homes are actively being serviced for the same pest issues, even if no actual service is being provided.

74.    EcoShield routinely claims their service is cheaper and more effective than other pest control companies like Terminix and Orkin, creating the illusion that the customer is receiving superior value.

75.    Salespersons are instructed to purposefully deceive consumers into believing

they are being offered a time-sensitive "discount" tailored just for the consumer by making false statements that the service is cheaper for anyone who EcoShield can squeeze in while in the area.

76.    The central feature of this script is EcoShield's use of a fictitious "Annual Commitment Discount," a term that appears in its contracts but misrepresents the true nature and purpose of EcoShield's pricing and cancellation model.

77.    The purported "Annual Commitment Discount" is not a temporary offer or special promotion, but rather a standard term in its contracts used to create the illusion of urgency and value.

78.    EcoShield requires customers who attempt to cancel to repay the "Annual Commitment Discount" they were told they received, even if consumers have fulfilled their "annual commitment." In practice, this fee functions as a concealed cancellation penalty, retroactively imposed if the customer attempts to cancel the contract, and can be further leveraged by Ecoshield through its threats of credit collection and reporting.

79.    EcoShield does not disclose the true nature of the cancellation fee.

80.    As a result, consumers are left with a false impression that the discount is a genuine, unique saving available only because of their location, timing, or neighbor participation.

81.    This tactic serves a dual purpose: to induce the consumer's signature by creating urgency and the illusion of a unique, time-sensitive deal and to discourage cancellation by transforming the "discount" into a debt obligation that EcoShield uses to deter and penalize termination.

### ii. The Adhesion Contract

82.    After the sales pitch, EcoShield presents consumers with a standardized contract via an electronic tablet and obtains the consumer's e-signature on the spot. Consumers are not afforded an adequate opportunity to review the terms of the contract and are rushed through the signature process by the EcoShield salesperson.

83.    The contract is adhesionary in all respects. Consumers cannot negotiate the terms of the contract and are pressured into signing the agreement under false pretenses of an emergent pest situation and/or a time-sensitive discount.

84.    The contract does not define the term "Discount" and EcoShield representatives do not orally explain the "Discount" clause or the post-signature consequences of early termination.

85.    When consumers refuse to repay the "discount", EcoShield threatens to and often does pursue debt collection actions, effectively holding consumers hostage unless they pay the costly fee.

86.    Further, EcoShield does not orally inform consumers of their rights to cancel the contract within three business days, in violation of the FTC's Cooling-Off Rule. The Rule makes it an unfair and deceptive act or practice for any door-to-door salesperson to fail to inform consumers orally of their right to cancel the contract within three business days or to misrepresent in any manner the consumer's right to cancel. 16 C.F.R. § 429.1(e) & (f).

### iii. EcoShield's Unlawful Practices are Rampant and Uniform

87.    Hundreds of consumers across the United States have publicly reported nearly identical misconduct of EcoShield in complaints posted to the Better Business Bureau,

Reddit**,** Trustpilot**,** Google Reviews**,** and other online forums.

88.    These complaints describe the same pattern of deception: door-to-door sales representatives falsely claiming neighborhood participation, offering time-limited "discounts," and threatening to send customers to collections if they refuse to pay the cancellation fee.

89.    In April 2024, Michigan's Attorney General announced that the Department of Attorney General sent a notice of intended action to EcoShield, telling Defendants to cease and desist from engaging in unlawful business practices:

> EcoShield's contracts allegedly include language attempting to waive consumers' cancellation rights due to an alleged emergency as well as a customer's rights to refunds for payments made for services rendered before a timely cancellation. Contracts also lacked the required notice of cancellation form.

> "With warmer weather comes an increase in door-to-door solicitors," [Attorney General] Nessel said. "Consumers have the right to take their time, ask questions, and avoid pressured on-the-spot decisions. Any deceptive tactics should be reported to my office."[4]

## V.    CLASS ACTION ALLEGATIONS

90.    Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves and the following classes:

> **National Class:** All persons in the United States who entered into a residential pest control services agreement with EcoShield Pest Solutions, LLC or one of its affiliates through a door-to-door sales solicitation.

> **Illinois Subclass:** All persons who entered into a residential pest

---

[4] Michigan Department of Attorney General, "AG Nessel Issues Cease and Desist Order to Pest Control Business for Alleged Consumer Protection Violations," https://www.michigan.gov/ag/news/press-releases/2024/04/24/ag-nessel-issues-cease-and-desist-order-to-pest-control-business.

control services agreement with EcoShield Pest Solutions, LLC or one of its affiliates through a door-to-door sales solicitation who are, or were at the time of entering into the agreement, Illinois residents.

**New Jersey Subclass:** All persons who entered into a residential pest control services agreement with EcoShield Pest Solutions, LLC or one of its affiliates through a door-to-door sales solicitation who are, or were at the time of entering into the agreement, New Jersey residents.

**Michigan Subclass:** All persons who entered into a residential pest control services agreement with EcoShield Pest Solutions, LLC or one of its affiliates through a door-to-door sales solicitation who are, or were at the time of entering into the agreement, Michigan residents.

91.    <u>Numerosity (Fed. R. Civ. P. 23(a)(1))</u>. The members of the Class are so numerous and geographically diverse that joinder is impracticable.

92.    <u>Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) & (a)(3))</u>. One or more common questions of law or fact are apt to drive resolution of the case and predominate over any questions affecting solely individual Class Members. The common questions include but are not limited to:

a.    Whether the Class conferred economic benefits on EcoShield;

b.    Whether EcoShield was unjustly enriched at the expense of the Class;

c.    Whether EcoShield's sales tactics constitute unfair or deceptive acts or practices;

d.    Whether EcoShield's inclusion of the Annual Commitment Discount in the pest control service agreements constitutes an unfair or deceptive act or practice; and

e.    Whether the Class suffered actual damages as a result of EcoShield's misconduct.

93.    <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>. Plaintiffs' claims are typical of the claims of other Class Members because they arise out of the same common course of conduct by EcoShield and are based on the same legal theories.

94.    <u>Adequacy (Fed. R. Civ. P. 23(a)(4))</u>. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with the interests of the Class.

95.    <u>Superiority (Fed. R. Civ. P. 23(b)(3))</u>. Plaintiffs and Class members have suffered harm and damages due to EcoShield's unlawful conduct. Absent a class action, however, most Class members would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

96.    Additionally, the Classes may be certified under Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

97.    Tolling: Any applicable statute of limitations has been tolled by EcoShield's

knowing and active concealment of the conduct and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and Class members were deceived and could not reasonably discover EcoShield's deception and unlawful conduct.

## VI.    CAUSES OF ACTION

### COUNT I
**Unjust Enrichment (Quasi-Contract for Restitution and Disgorgement)**
**(On behalf of the Nationwide Class Under Arizona Law)**

98.    Plaintiffs hereby incorporate the factual allegations set forth above by reference.

99.    The pest control service agreements entered into by Plaintiffs and the Class on one hand, and EcoShield on the other, are invalid and unenforceable because they are the product of EcoShield's fraudulent and wrongful conduct described herein.

100.    Plaintiffs and Class Members conferred economic benefits upon EcoShield in the form of unlawful charges under the purported agreements, including payment of the illusory Annual Commitment Discount which actually acts as a cancelation fee.

101.    As a result, EcoShield was unjustly enriched at the expense of Plaintiffs and the Class and received benefits it would not have received but for its wrongful conduct.

102.    It would be inequitable for EcoShield to retain the benefits it has unjustly received.

103.    Plaintiffs and Class Members are therefore entitled to relief, including restitution and disgorgement of all revenues, earning, and profits that EcoShield obtained as a result of its unlawful and wrongful conduct.

### COUNT II
**Illinois Consumer Fraud and Deceptive Business Practices Act**

**(ICFA), 815 ILCS 505/1, *et seq.***
**(On Behalf of the Illinois Subclass)**

104.    Plaintiffs hereby incorporate the factual allegations set forth above by reference.

105.    The ICFA provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'…in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

106.    In turn, the Illinois Uniform Deceptive Trade Practices Act provides that a "person engages in a deceptive trade practice when, in the course of his or her business" does any of the following: "(9) advertises goods or services with intent not to sell them as advertised…(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or "(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2

107.    "Any person who suffers actual damage as a result of a violation of [the ICFA] committed by any other person may bring an action against such person." 815 ILCS 505/10a.

108.    Plaintiffs are "consumers" as defined by the ICFA, 815 IlCS 505/1(e).

109.    The transactions between Plaintiffs and EcoShield constitute "trade" or "commerce" as defined by 815 ILCS 505/1(f).

110.    EcoShield concealed material facts related to its contracts and services and

engaged in the unfair and deceptive conduct described in this Complaint, with the purpose and intent that Plaintiffs rely thereon.

111.    Indeed, EcoShield is fully aware of its unlawful actions, particularly in light of the Michigan Attorney General's notice of intended action and the litany of complaints with the Better Business Bureau and other online forums.

112.    EcoShield's unlawful conduct includes, but is not limited to:

    a.  advertising its services at a discounted rate that it did not intend to honor and making false and/or misleading statements of fact about the Annual Commitment Discount in violation of the UDTPA;

    b.  failing to orally inform Plaintiffs of their rights under the FTC's Cooling-Off Rule, 16 C.F.R. § 429;

    c.  falsely stating EcoShield was servicing neighbors' homes;

    d.  falsely stating Plaintiffs were experiencing a pest issue;

    e.  falsely stating Plaintiffs' neighbors were experiencing the same emergent pest issues;

    f.  offering time-sensitive discounts that were neither time-limited nor discounts at all;

    g.  failing to disclose that these purported discounts must be repaid as a cancellation fee;

    h.  labelling these discounts as "Annual Commitment Discounts," but requiring consumers to repay the discount even when the contract is cancelled after a year;

    i.   depriving consumers of any meaningful opportunity to review the contracts before signing by rushing them through electronic signature fields on a table;

    j.   dispatching service technicians to the consumer's property the same day of sale to create the false appearance that the agreement was final and irreversible;

    k.   failing to disclose and/or concealing material terms of the service agreements including durations and auto-renewal provisions;

    l.   coercing consumers into paying the cancellation fee (*i.e.*, the Annual Commitment Discount) by threatening and pursuing collection actions.

113.   EcoShield had a duty to disclose the above-referenced material omissions because it had special knowledge of the facts while Plaintiffs and the Class did not and because the disclosures were required to prevent Plaintiffs and the Class from being misled under the circumstances created by EcoShield.

114.   EcoShield's actions offend public policy and are immoral, unethical, oppressive, and unscrupulous.

115.   EcoShield's conduct, misrepresentations, and omissions have also impaired competition within the extermination market in that EcoShield's conduct prevented Plaintiffs and Class Members from making fully informed decisions about whether to become an EcoShield customer in the first instance.

116.   Plaintiffs and Class Members relied on EcoShield's conduct, misrepresentations, and omissions (which were part of a uniform and common strategy to

deceive consumers), when they entered into contracts with EcoShield.

117.    Indeed, EcoShield's conduct was likely to deceive any consumer acting reasonably in the same circumstances and could not have been reasonably avoided.

118.    Had Plaintiffs and Class Members known the truth about EcoShield's conduct, its deceptive representations, and the nature of the "Annual Commitment Discount," they would not have entered into contracts with EcoShield; instead, they were lured into purchasing recurring services through EcoShield's deceptive selling practices.

119.    The injuries caused by EcoShield's conduct are substantial and directed to a significant segment of the public.

120.    EcoShield's conduct does not carry any countervailing benefit to consumers or competition.

121.    As a direct and proximate result of EcoShield's unlawful conduct, Plaintiffs and the Class suffered actual damages, including unlawful charges and the loss of money attributable to repayment of the Annual Commitment Discount or continued subscription payments due to the steep, hidden cancellation fee.

122.    If EcoShield does not change its practices, EcoShield will continue to deceive consumers into recurring subscription contracts, thereby subjecting consumers to unlawful charges and forcing them to pay fraudulent, unfair, and deceptive cancellation fees.

123.    Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages and reasonable attorneys' fees and costs, and any other relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT III**
**New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. § 56:8, *et seq.*,**
**(On Behalf of the New Jersey Subclass)**

124.    Plaintiffs hereby incorporate the factual allegations set forth above by reference.

125.    The NJCFA declares unlawful "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…whether or not any person has in fact been misled, deceived or damaged." N.J. Stat. § 56:8-2.

126.    The NJCFA provides, "The advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the act to which this act is a supplement." N.J. Stat. Ann. § 56:8-2.2

127.    "Advertisement" is described as "the attempt directly or indirectly by…solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation[.]" N.J. Stat. Ann. § 56:8-1(a).

128.    "Merchandise" includes "any…services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(b).

129.    "Person" means "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee,

salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof."  N.J. Stat. Ann. § 56:8-1(d).

130.    "Any person violating the provisions of the [] act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful." N.J. Stat. § 56:8-2.11.

131.    The act provides a private cause of action for "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction." N.J. Stat. § 56:8-19.

132.    EcoShield is a "person" within the meaning of the NJCFA.

133.    EcoShield's pest control services constitute "merchandise" within the meaning of the NJCFA.

134.    EcoShield's door-to-door solicitations described herein are "advertisements" within the meaning of the NJCFA.

135.    EcoShield engaged in the unconscionable, abusive, deceptive, and fraudulent acts described above in ¶ 112, in connection with its sale and advertisement of merchandise, in violation of the NJCFA.

136.    Further, EcoShield advertised its pest control services using illusory time-sensitive discounts as part of a plan or scheme to not sell its services at any discounted rate at all, in further violation of the NJCFA, N.J. Stat. § 56:8-2.2

137.    As a direct and proximate result of EcoShield's unlawful conduct, Plaintiff and

the Class suffered ascertainable losses, including unlawful charges and the loss of money attributable to repayment of the Annual Commitment Discount.

138.    Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages and reasonable attorneys' fees and costs, and any other relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.901, *et seq.*,**
**(On Behalf of the Michigan Subclass)**

139.    The MCPA condemns "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" as unlawful. Mich. Comp. Laws § 445.903.

140.    "Trade or commerce" means "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." Mich. Comp. Laws § 445.902(g).

141.    Section 3 of the MCPA defines unfair, unconscionable, or deceptive acts as including:

> (a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.
> …
> (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.
> …
> (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.

…

(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

…

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

…

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

…

(x) Taking advantage of the consumer's inability reasonably to protect his or her interests by reason of disability, illiteracy, or inability to understand the language of an agreement presented by the other party to the transaction who knows or reasonably should know of the consumer's inability.

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

…

(aa) Causing coercion and duress as the result of the time and nature of a sales presentation.

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws § 445.903.

142.  "A person who suffers loss as a result of a violation of [the MCPA] may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by… [a] method, act, or practice in trade or commerce defined as unlawful under section 3." Mich. Comp. Laws § 445.911.

143.  EcoShield provides its pest control services primarily for personal, family, or

household purposes.

144.   EcoShield engaged in the unfair, unconscionable, or deceptive acts described above in ¶ 112, in the conduct of trade or commerce, in violation of the MCPA.

145.   As a result of EcoShield's unlawful conduct, Plaintiffs and the Class suffered actual damages, including unlawful charges and the loss of money attributable to repayment of the Annual Commitment Discount.

146.   Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive damages and any other relief as deemed appropriate or permitted pursuant to the relevant law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Subclasses set forth herein, respectfully request the following relief:

A.   That the Court certify this action as a class action and appoint Plaintiffs and their counsel to represent the Class;

C.   That the Court award compensatory, consequential and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

D.   That the Court award statutory or punitive damages as allowed by law in an amount to be determined at trial;

E.   That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of

Defendants' unlawful acts, omissions, and practices;

F.  That the Court award to Plaintiffs and Class members reasonable attorneys' fees, costs, and expenses; and

G.  That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. Rule Civ. P. 38, Plaintiffs hereby demand a jury trial.

Dated: October 14, 2025.                    Respectfully Submitted,

By: */s/ Cristina Perez Hesano*
Cristina Perez Hesano
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ  85301
Phone (602) 730-7100
cperez@perezlawgroup.com

**GIANARIS TRIAL LAWYERS**
Ted N. Gianaris, *pro hac vice*
*tgianaris@lawforpeople.com*
1 Design Mesa
Collinsville, IL 62234
Telephone: (618) 816-9999

**SIMMONS HANLY CONROY, LLC**
Jason "Jay" Barnes, *pro hac vice*
Eric S. Johnson, *pro hac vice*
*jaybarnes@simmonsfirm.com*
*ejohnson@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400

*Attorneys for Plaintiffs and Proposed Class*